Abraham S. GOULD, Plaintiff,

v.

TRICON, INC., J. Dudley Smith, Israel Slutzky, Joseph T. Akers, Sano & Co., Anthony Sano and Walter W. Thrailkill, Defendants.

No. 61 Civ. 1843.

United States District Court
S. D. New York.

June 9, 1967.

388

Feiner & Klaris, New York City, Herbert A. Lyon, New Gardens, N. Y., of counsel, for plaintiff.

Louis M. Weber, Great Neck, N. Y., for defendant Slutzky.

Ivey, Barnum & O'Mara, Greenwich, Conn., Paul J. Goodman, Forest Hills, N. Y., of counsel, for defendants Tricon, Smith and Akers.

## OPINION

TENNEY, District Judge.

Plaintiff, the owner of 20,850 shares of stock of Tricon, Inc., brings this action against the various defendants under Sections 12(2) and 17(a) of the Securities Act of 1933, 68 Stat. 686 (1954), as amended, 15 U.S.C. § 77l (1958); 68 Stat. 686 (1954), as amended, 15 U.S.C. § 77q (1958), and under

Section 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891 (1934), 15 U.S.C. § 78j (1958), and Rule 10b–5 promulgated pursuant thereto (17 C.F.R. § 240.10b–5), alleging that the various defendants are liable for making material untrue statements in a prospectus and supplementary prospectus of Tricon, Inc., and for omitting certain material facts therefrom.

Defendant Tricon, Inc., during the time of all of the events complained of, was a corporation duly organized and existing under the laws of the State of Connecticut and had its principal place of business in the State of Connecticut.

Defendant Sano & Co. (presently in default) was a partnership having its principal place of business at 15 William Street, New York, New York, and defendant Anthony Sano (also presently in default) was a general partner therein.

At all such times, defendant J. Dudley Smith was the President and Chairman of the Board of Directors of defendant Tricon, Inc., and was the owner of 75,000 shares of the stock of said defendant, which shares represented 60 per cent of the outstanding shares of Tricon, Inc., prior to October 27, 1958, the date of the public offering.

At all such times, defendant Joseph T. Akers was the Vice-President and Secretary and a member of the Board of Directors of Tricon, Inc., and was the owner of 25,000 shares of the stock of said defendant, which shares represented 20 per cent of the outstanding shares prior to the public offering.

Defendant Israel Slutzky was the Treasurer and a member of the Board of Directors of defendant Tricon, Inc., and continued to be so until early 1959 (the exact date of his resignation being in dispute), and was the owner of 25,000 shares of the stock of said defendant, which shares represented 20 per cent of the outstanding shares prior to the public offering.

By reason of their filling the entire slate of offices, constituting the entire

board of directors and owning 100 per cent of the stock of defendant Tricon, Inc. and otherwise, defendants Smith, Slutzky and Akers, individually and collectively, at least up until the time of the public offering, controlled defendant Tricon, Inc.

Defendant Smith had spent much of his life designing and inventing various marine devices. From 1956 until February 1957, Smith worked on a "push-pull" steering device (sometimes called the "Tru-Ster" device) for Anti-Corrosive Metal Products Co., Inc. (hereinafter referred to as "Anti-Corrosive"), a New York corporation. A licensing agreement entered into between Smith and Anti-Corrosive (Exhibit 16) gave Anti-Corrosive the right to all future and related inventions, improvements and patents relating to the steering device. Richard Mack, the President of Anti-Corrosive, testified, that at the time Smith left, the device was incomplete and unworkable.

In May 1957, Smith began work on the Tricon steering device, which device he claims was unrelated to the Anti-Corrosive steering device. In June 1958, the defendant Tricon, Inc. was formed, with defendants Smith, Akers and Slutzky acting as directors.

On or about October 27, 1958, and thereafter defendant Tricon, Inc., acting through its underwriter and agent, Sano & Co., offered for sale to the public 150,000 shares of stock of defendant Tricon, Inc. at a price of $2.00 per share by means of a prospectus dated October 27, 1958. (Exhibit 1.) The prospectus stated, among other things, that the Tricon control device had already been designed and developed by Smith; that all development work was complete; that Smith had conveyed all his right, title and interest in the Tricon device to defendant Tricon, Inc.; that detailed drawings of the Tricon device were available; and that the erection of production facilities would cost about $60,000. No mention was made of Smith's prior association with Anti-Corrosive. The defendant Tricon, Inc., acting through Sano & Co., furnished a copy of the prospectus to plaintiff.

On January 6, 1959, Slutzky's resignation as Treasurer and Director of Tricon, Inc. was accepted by the Board of Directors. (Slutzky Exhibit G.) At about this same time, Slutzky's construction company, I. & O. A. Slutzky, submitted a proposal for the construction of production facilities in Greenwich, Connecticut, at an estimated cost of $120,000. (Exhibit 18.)

Plaintiff, on or about February 2, 1959, relying on the truth, accuracy and completeness of the prospectus and having no knowledge of any untrue statements or omissions, purchased 13,850 shares of the stock for the agreed purchase price of $27,700.00 from defendant Sano & Co., as underwriter and agent of defendant Tricon, Inc. Said purchase and sale took place in the City of New York and was transacted by the use of the mails and the means and instruments of transportation and communication in interstate commerce.

On February 21, 1959, a special meeting of the Board of Directors of Tricon, Inc. was held, at which time Slutzky's proposal to construct the Greenwich facilities was accepted. (Exhibit 21.) On February 26, 1959, notice of a special stockholders' meeting to be called for the purpose of approving the construction contract entered into between Tricon, Inc. and I. & O. A. Slutzky (Exhibit A) was mailed to all shareholders. Plaintiff alleges that he never received notice of said meeting. Nevertheless, plaintiff did attend the shareholders' meeting on March 16, 1959 and it was plaintiff himself who moved the approval of the construction contract. (Exhibit 4.)

On or about January 5, 1960, defendant Tricon, Inc., acting through its agent, Walter W. Thrailkill (a defendant in default), offered to sell to plaintiff an additional 7,500 shares of Tricon's stock at a price of fifty cents per share by means of a prospectus and an affidavit (hereinafter referred to as "Supplementary Prospectus") sworn to January 5,

1960. Said purchase and sale took place in the City of New York and was transacted by the use of the means and instruments of transportation and communication in interstate commerce.

Plaintiff purchased the above-mentioned stock as a result of his reliance on the original prospectus and on the representation by Thrailkill and Smith that the money invested by plaintiff would be used solely for the production of a prototype of the Tricon control.

On January 12, 1960, plaintiff sold 500 of his original Tricon shares at the price of $1.00 per share, thereby sustaining a loss of $500, and leaving him with 20,850 Tricon shares.

From January until May 1960, plaintiff began to take a greater interest in the affairs of Tricon, Inc. and even undertook several business trips on behalf of the corporation. At about this time, plaintiff also began to realize the Company's precarious financial position.

In May 1960, the Board of Directors approved the sale of Tricon's Greenwich property to one Jaccheo. On May 23, 1960, Harold S. Elovich resigned as general counsel to the corporation, stating "It is impossible for this firm to act as Counsel under the present leadership and promulgation of policies enacted by this leadership." (Exhibit L.) A copy of the letter setting forth Elovich's reasons for his resignation was read by plaintiff.

Finally, on June 21, 1960, a special meeting of the stockholders of Tricon, Inc. was held, at which time the full picture of Smith's handling of the affairs of Tricon, Inc. and of his prior association with Anti-Corrosive, came to light. The old directors, including Smith and Akers were removed, and new directors were elected in their place. (Exhibit E.)

Plaintiff commenced the instant action by the filing of a complaint on May 21, 1961. Defendant Slutzky was served on May 23, 1961, defendant Akers on June 5, 1961, and defendant Smith on July 5, 1961.

Section 12(2) of the Securities Act of 1933 provides in pertinent part:

Any person who—

(2) offers or sells a security * * * by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him * * * to recover the consideration paid for such security with interest thereon * * *.

After careful consideration, the Court holds that the failure of the Tricon prospectus (Exhibit 1) to disclose defendant Smith's prior association with Anti-Corrosive was an omission of a material fact within the meaning of Section 12(2). The evidence has clearly shown that defendant Smith was working on a steering device for Anti-Corrosive prior to the formation of Tricon, Inc. Although it has been claimed by defendants that the Anti-Corrosive steering device differed significantly from the Tricon device, an investor such as plaintiff should be entitled to find out for himself just how similar the two steering devices were, how far Smith had progressed in his work on the Anti-Corrosive device, and how successful was the entire venture. Had plaintiff been in a position to seek answers to questions such as these, he might have been far more reluctant to invest in the Tricon enterprise without further investigation.

In addition, there has been testimony that Smith had assigned his rights to

all future and related inventions and patents relating to the "push-pull" steering device to Anti-Corrosive. Although this is not a suit for patent infringement, plaintiff had a right to know about such assignment and the possibility that defendant Tricon, Inc. might be leaving itself open to future lawsuits if it ever produced Smith's steering device.

■■ Also, the mere fact that the prospectus mentioned the word "Tru-Ster" is no reason to exculpate defendants. It is patently unfair to require a prospective investor to be familiar with a trade name and immediately associate that trade name with a particular company.

■ Defendants have interposed several defenses to plaintiff's action under Section 12(2). In the first place, all defendants claim that the action is barred by the one-year statute of limitations contained in Section 13 of the Securities Act of 1933, 48 Stat. 908 (1934), as amended, .15 U.S.C. § 77m (1958). This statute provides that no action can be maintained under Section 12(2) "unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made in the exercise of reasonable diligence". Although plaintiff did have some knowledge of Tricon's precarious position prior to the June 1960 shareholders' meeting, it was not until this meeting that plaintiff was possessed of sufficient information to reveal the entire picture of the false prospectus. At this time, the disenchanted shareholders exchanged information about the corporation's problems. In addition, this was the occasion when Gould first learned from Elovich about the investigator's report (Exhibit 7) which placed the defendant Smith in very unflattering light. Elovich himself had only become disenchanted with the enterprise in the prior month when he resigned as counsel to Tricon, Inc. after learning of Smith's entanglements. Given these facts, the Court is of the opinion that plaintiff did not discover and could not have discovered with reasonable diligence the true facts about Tricon, Inc. and Smith's prior background with Anti-Corrosive until June 21, 1960. Since plaintiff instituted suit within a year from this date, plaintiff's action is not barred by Section 13 of the Securities Act of 1933.

Defendant Slutzky claims the action should be dismissed against him by reason of the fact that he had resigned as an officer and a director of Tricon, Inc. prior to the time plaintiff became a shareholder (February 2, 1959). Slutzky's resignation as officer and director was dated January 2, 1959 and was accepted at a Board of Directors' meeting on January 6, 1959 (Exhibit G). Notice of Slutzky's resignation was mailed to all shareholders on February 26, 1959 (Exhibit A), although plaintiff denies ever having received such notice.

■ Plaintiff admits that defendant Slutzky resigned as an officer-director of Tricon, Inc., but argues that he did not take the steps to exonerate himself from civil liability as required by Section 11 of the Securities Act of 1933, 48 Stat. 907 (1934), as amended, 15 U.S.C. § 77k (1958). However, Section 11 details the steps a former director must take to exonerate himself from liability on account of a *false registration statement*. But since this suit concerns only a false prospectus, Section 11 is clearly inapplicable. Section 12 is the only applicable provision on this issue.

■ Plaintiff also relies on the fact that when Tricon, Inc. filed Form 2-A with the Securities and Exchange Commission on February 4, 1959 (as required by 17 C.F.R. § 230.260), defendant Slutzky was listed as a director of the corporation (Exhibit O). However, such forms are filed so that an issuer can report its sales to the Securities and Exchange Commission every six months following the date of the original offering circular. This is required by law. Whether civil liability may be imposed on a director or former director under Section 12(2) should not depend upon

whether his name appears on a report filed with the Securities and Exchange Commission for such reason.

Furthermore, counsel has cited no decision nor has the Court found any authority which casts upon a resigning director any affirmative duty to notify the Securities and Exchange Commission or the public of his resignation at the peril of subjecting himself to future actions under Section 12(2). The resignation of the defendant Slutzky prior to the time plaintiff became a shareholder of Tricon, Inc. removed any duty of Slutzky which he may have had as a director to the shareholders, excepting such liability, if any, as he had incurred to shareholders prior to his resignation. And any such liability could not extend to plaintiff who was not a shareholder at the time of Slutzky's resignation. Hence, defendant Slutzky cannot be held liable to plaintiff for any omissions or misstatements in the prospectus.

Defendant Akers claims that he may not be held liable under Section 12(2) on the ground that he has sustained his burden of proof under this section "that he did not know, and in the exercise of reasonable care could not have known" that the omission to reveal defendant Smith's prior connection with Anti-Corrosive was the omission of a material fact. The testimony has revealed that Akers first met Smith in 1958. At this time, Smith indicated that he was involved with various marine devices, and particularly the "Tru-Ster" mechanism. On cross-examination, Akers admitted he knew that Smith had been connected with Anti-Corrosive. However, no testimony was elicited about any knowledge Akers may have had about Smith's background with Anti-Corrosive and how successful Smith's work had been. From the mere fact that defendant Akers knew of defendant Smith's prior connection with Anti-Corrosive, plaintiff seeks to impose a duty on defendant Akers to make further inquiry into Smith's background with Anti-Corrosive. No case has been cited by plaintiff, nor does the Court find any valid reason to impose a duty on a director to inquire into the background of a co-director whose bibliography appears in a prospectus, especially where the director has no grounds to believe that the prospectus has omitted any material facts.

Although defendant Akers cannot be held liable under Section 12(2) for failure of the prospectus to mention defendant Smith's prior association with Anti-Corrosive, he may be held liable for several alleged misrepresentations in the prospectus—namely, that the Tricon device had already been designed and that all development work was complete and that the Greenwich plant would cost $60,000 to construct.

The evidence has shown that the statements in the prospectus concerning the Tricon device were misleading. At the time the prospectus was issued, the Tricon device was not fully designed and development work was far from complete. The prospectus was more optimistic about the steering mechanism than it had a right to be under the circumstances. See Winter v. D. J. & M. Inv. & Constr. Corp., 185 F.Supp. 943 (S.D. Cal.1960). The statements about the Tricon device go far beyond "mere puffing" and constitute an outright misrepresentation. S. E. C. v. Los Angeles Trust Deed and Mortgage Exch., 186 F.Supp. 830, 873 (S.D.Cal.), modified on other grounds, 285 F.2d 162 (9th Cir. 1960), cert. denied, 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961).

Nor does the Court find that defendant Akers has sustained his burden of proof that he did not know and in the exercise of reasonable care could not have known of such untruth. When Akers became a director of Tricon, Inc. and allowed his name to appear on the prospectus, he warranted that any statements in the prospectus concerning the Tricon device were accurate. If he was uncertain as to whether the device had been fully designed and whether development work was complete, he had a

duty to make further inquiry before allowing his name to appear on a prospectus setting forth such facts. His failure to do so makes him liable under Section 12(2). By the same token, defendant Smith is also liable for this misrepresentation. This finding makes consideration of the alleged misrepresentation in the prospectus as to the cost of the building unnecessary.

■ In conclusion, the Court is of the opinion that plaintiff, upon tender of the Tricon shares in his possession, is entitled to recover, under Section 12(2) of the Securities Act of 1933, the consideration paid for such shares, with interest, against defendants Tricon, Inc., Smith and Akers by reason of the material omissions and misstatements in the prospectus and supplementary prospectus of Tricon, Inc.[1]

■ Finally, plaintiff claims he is also entitled to recover against the defendants under Section 17 of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934. However, to maintain such an action, these sections require plaintiff to prove fraudulent conduct on the part of the defendants. Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951); Colonial Realty Corp. v. Brunswick Corp., 257 F.Supp. 875 (S.D.N.Y. 1966). In addition, under these sections, unlike Section 12(2), the burden of proof rests squarely on the plaintiff. Pfeffer v. Cressaty, 223 F.Supp. 756 (S.D.N.Y.1963); Thiele v. Shields, 131 F.Supp. 416 (S.D.N.Y. 1955). The special right to recover under Section 12(2) of the Securities Act of 1933 "which differs substantially from the common-law action in that the seller is made to assume the burden of proving lack of scienter", Wilko v. Swan, 346 U.S. 427, 431, 74 S.Ct. 182, 184, 98 L.Ed. 168 (1953), is not available to a plaintiff suing under Section 17 of the Securities Act of 1933 or the Securities

Exchange Act of 1934. Since plaintiff has failed to meet the burden of proof required by Section 17 and Section 10(b), his action under those sections must be dismissed.

Settle order on notice in conformity herewith.

1. It should be noted that at the conclusion of the trial, plaintiff consented to the dismissal of his second cause of action (based upon the 7,500 shares purchased after having received the supplemental prospectus) as to defendants Akers and Slutzky. See letter from plaintiff's counsel, dated May 18, 1967.