[No. D055209. Fourth Dist., Div. One. Jan. 11, 2011.]

AUDREY VITERBI et al., Plaintiffs and Appellants, v.
GENEVA WASSERMAN, Defendant and Respondent.

**COUNSEL**

Frank E. Rogozienski, Inc., and Frank E. Rogozienski for Plaintiffs and Appellants.

Lawton Law Firm, Dan Lawton and Joseph C. Kracht for Defendant and Respondent.

**OPINION**

**NARES, J.**—In this case we are presented with an issue of first impression in California: Does the remedy of rescission in a securities fraud claim brought under Corporations Code sections 25504 and 25504.1[1] require privity of contract between the plaintiff and defendant? In other words, can a purchaser of securities sue for rescission under sections 25504 and 25504.1, which provide for liability against "control persons" and "aiders and abettors," if those persons or entities did not sell the security to the plaintiff? We conclude that privity of contract is necessary to maintain an action for rescission under sections 25504 and 25504.1, and therefore a purchaser of securities may not maintain such a claim against someone other than the direct seller. That is so because rescission requires the contracting parties to be placed in the position they were in prior to contracting, and a nonseller, who did not receive any money from the purchaser, cannot return that money to the purchaser. We affirm.

---

[1] All further statutory references are to the Corporations Code unless otherwise specified.

## INTRODUCTION

This action arises out of plaintiffs Audrey Viterbi and Dan Smargon's (together, plaintiffs) purchase of $200,000 worth of securities from a company named Economic Inventions, LLC (EI), which held patents on "expirationless options," a type of derivative security. Plaintiffs sued EI, its president, Vergil Daughtery II, two board members, David Gleeson and Steven Wallman, and defendant and respondent on this appeal, Geneva Wasserman. Wasserman is a former employee of Viterbi who worked as an analyst on Viterbi's biotech investments. It is undisputed that Wasserman did not sell the securities to plaintiffs. Rather, plaintiffs alleged that Wasserman failed to disclose to them that EI had granted an exclusive license to the patents to NexTrade Holdings, Inc. (NexTrade), which they assert made the stock worthless, failed to disclose her interest in EI, and misrepresented to them that her parents had invested in EI.

The court dismissed the action against Gleeson and Wallman based upon a lack of jurisdiction, and this court affirmed that dismissal. (*Smargon v. Gleeson* (Nov. 20, 2008, D050980) [nonpub. opn.].) EI and Daughtery filed for bankruptcy and the action was stayed as to them, leaving only Wasserman as a defendant.

The court granted Wasserman's motion for summary adjudication as to all claims except for constructive trust and for statutory securities fraud brought under sections 25504 and 25504.1. Thereafter, the court granted a nonsuit on the securities fraud claim, finding (1) plaintiffs had no damages remedy because they continued to own the securities; and (2) they could not seek rescission against Wasserman because she did not sell them the stock and therefore there was a lack of privity of contract. The court also ruled that its previous ruling granting summary adjudication eliminated any issue as to false representation, scienter, intent to defraud and causation/damages. The court ruled the constructive trust claim was stayed by EI's bankruptcy.

This appeal concerns only the court's grant of nonsuit as to the securities fraud claim. Plaintiffs allege the court erred in granting nonsuit on this claim because (1) sections 25504 and 25504.1 do not require privity of contract to obtain a "rescissionary" remedy; and (2) the court erred in relying on the findings it made on its previous summary adjudication ruling in granting nonsuit.

We conclude that because Wasserman did not sell the securities to plaintiffs, and thus was not in privity of contract with them, they have no remedy of rescission against her, and therefore the court properly granted a nonsuit in her favor on their securities fraud claim. Accordingly, we need not address

whether the court erred in also granting nonsuit based upon the findings it made on Wasserman's summary adjudication motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Because we are concluding as a matter of law plaintiffs have no right to rescission in the case, we address the facts relating to the underlying dispute only to the extent necessary to understand the nature of the dispute between the parties.

### A. *The Parties*

Viterbi has a doctoral degree in electrical engineering and computer science. She is the cofounder and partner in Linkagene and the Viterbi Group, companies that invest in private and public companies. Her partner in the Viterbi Group is her father, Andrew Viterbi, cofounder of Qualcomm, Inc. Viterbi is a venture capitalist and considers herself a sophisticated investor. Smargon is a securities trader who trades stock index futures.

Linkagene and the Viterbi Group focused their investments in the areas of biotech, life sciences, "telecom and beyond that."

Viterbi and Wasserman met at a charity event in 2002 and became friends. Viterbi at the time was "looking for somebody to work on biotech investments with, and she seemed to have the necessary qualifications," which included an M.B.A., J.D., and an undergraduate degree in biology. Viterbi hired Wasserman as an analyst on biotech investments. Wasserman looked at potential investments and advised Viterbi on them.

### B. *The Investment in EI*

Beginning in 2002, Wasserman received and forwarded to Viterbi various documents about EI. In an e-mail attaching information about EI, Wasserman identified herself as being a "shareholder/officer" of that company. Viterbi reviewed the business plan, as well as the private placement memorandum (PPM) and subscription agreement.

The PPM warned that: "THESE SECURITIES ARE SPECULATIVE AND INVOLVE A HIGH DEGREE OF RISK. ONLY PERSONS WHO CAN AFFORD TO LOSE A PORTION OR ALL OF THEIR INVESTMENT AND HAVE NO NEED FOR A CURRENT RETURN ON THEIR INVESTMENT SHOULD CONSIDER THE PURCHASE."

The PPM warned of several "primary risk factors," including (1) EI's "execution platform partner" failing "to perform"; (2) market disinterest in

expirationless options; (3) a failure to meet projections of market volume; and (4) a failure to win regulatory approvals. The PPM stated that these risks could reduce or eliminate "patent residual payments," which were described as EI's "primary source of future income."

In her deposition testimony, Viterbi acknowledged that she read and understood these risk factors before investing in EI. She understood and acknowledged she could lose all her money. She acknowledged that it was important to her to know what the risk factors are before investing money.

The PPM also warned that no investor should invest in the company unless "willing to entrust all aspects of the management of the Company" to its officers and directors. Viterbi did not contact any EI director or officer before investing. This was despite the fact Viterbi frequently spoke to CEO's or other corporate officers before investing funds in their companies.

Shortly before investing in EI, Viterbi "wasn't sold on the investment" and "wasn't enthused with making the investment." She sought advice from a childhood friend, who was a former employee of Bear Stearns. Her friend's advice was negative. In an e-mail sent to Viterbi a week before she invested in EI, her friend told her the following: "I don't see any ability to get the kinds of revenues they are talking about. I am not sure what is the big deal here with their perpetual options, and the contention that issuing long-term options that extend beyond three years is being prohibited by their patent sounds laughable to me . . . . I am not a patent expert, but I can imagine all sorts of ways to create comparable instruments. *So I would find other*[] *ways to lose money*." (Italics added.)

Viterbi read that e-mail and acknowledged that it was "very negative." Nevertheless, Viterbi did not follow up with her friend. She did not vet EI's concept with anyone else.

In May 2003 Viterbi and Smargon bought membership interests in EI for $200,000 in cash. They both signed the subscription agreement. That subscription agreement recited that they had obtained "independent professional advice with respects to the risks inherent" in their investment; the suitability of the investment based on their objectives and financial needs; their ability to lose the money invested; their access to "full and complete information regarding the Company . . . to [their] satisfaction, or [have] waived the opportunity " to have such access; and their recognition of the "high degree of risk" inherent in the investment.

It is undisputed Wasserman did not sell the securities to Viterbi and Smargon. Wasserman did not receive any money from them.

## C. *Alleged Securities Fraud*

Before plaintiffs purchased their shares in EI, EI entered into an exclusive license agreement with NexTrade. Plaintiffs allege they were not aware of this agreement, or its terms, and did not receive a copy of the agreement until 2005. They alleged the terms of the agreement were not disclosed in the offering documents, and the statement therein that EI was "the exclusive licensor" of its patents was false given the exclusive license already given to NexTrade.

They alleged the terms of the agreement with NexTrade were "a disaster" for EI. The agreement gave to NexTrade in perpetuity a worldwide royalty-free exclusive license, thereby stripping EI of the rights necessary to commercialize the patents. The agreement gave to NexTrade all the intellectual property owned by EI for no fee or royalty. It granted to NexTrade all rights to patents arising from EI's existing patent for no fees or royalties. The agreement gave NexTrade the right to sublicense the patents to third parties.

The only thing EI received in return was one-half of any sublicense fees and one-half of any net income NexTrade received from use of the patents. The agreement did not require any performance or diligence obligations of NexTrade, which plaintiffs allege are essential, customary and standard in patent licenses.

According to plaintiffs, EI has received no money from the agreement and has no income. EI is bankrupt, with assets of $100 and liabilities of approximately $3.9 million.

Also according to plaintiffs, Wasserman knew of the agreement and its problematic terms, but did not disclose them to plaintiffs prior to their investment.

Plaintiffs also allege the offering documents falsely stated the founders of EI had invested over $900,000 in EI. In fact, the founders of EI invested approximately $5,000.

Plaintiffs allege that, before they made the investment, Wasserman falsely represented to Viterbi that her (Wasserman's) parents had invested in EI. According to plaintiffs, Viterbi knew Wasserman's parents and did not believe Wasserman would put her parents in a problematic investment.

## D. *Wasserman's Involvement with EI*

Wasserman represented herself to be an officer, director and member of the advisory board of EI, and led its fundraising efforts. She was also its in-house

attorney. She was a shareholder in EI, having been given 300,000 units for $100. Wasserman was employed by EI and maintained an e-mail account with them.

As a result of her efforts in getting plaintiffs to invest $200,000 in EI, she received a 6 percent "finder's fee" and an additional 20,000 units in EI at no cost to herself.

### E. *Plaintiffs' Continued Ownership of EI Stock*

According to plaintiffs, the securities they purchased are not marketable and are worthless. They are restricted and there is no trading market. Thus, they continue to own the securities.

### F. *Wasserman's Summary Adjudication Motion*

Wasserman moved for summary judgment on the claims for fraud, negligent misrepresentation, constructive trust, accounting, and securities fraud. The court granted summary judgment as to Smargon on all causes of action and granted summary adjudication as to Viterbi on the causes of action for fraud, negligent misrepresentation, accounting and securities fraud. The court found there was no evidence of an actionable statement by Wasserman, no evidence of scienter, no triable issue of fact as to causation or damages, and that Wasserman lacked authority to perform an accounting. The court denied the motion as to the cause of action for constructive trust, finding there was conflicting evidence as to her "responsibility, if any, for an alleged diversion of EI's corporate assets."

Plaintiffs brought a motion for reconsideration and for new trial. The court granted the motion for reconsideration as to the cause of action for securities fraud, finding that "relevant disputed evidence" precluded summary adjudication on that claim.

### G. *Trial and Motion for Nonsuit*

Shortly before trial, Wasserman brought a motion for nonsuit as to the cause of action for securities fraud, arguing (1) plaintiffs had no claim for damages as they still owned the stock; (2) rescission, plaintiffs sole remaining remedy, was unavailable as a matter of law because of a lack of privity of contract; and (3) the court's prior grant of summary judgment eliminated any issues as to false statements, scienter, materiality or causation.

The court issued a tentative ruling, granting the motion. The court found that "[t]he remedy of rescission is not available against a defendant who is

not a party to the contract sued on. Privity of contract is an essential element of any cause of action seeking rescission. The parties are not in privity of contract. Plaintiffs continue to own the shares of [EI] that are the subject of the litigation. Under the allegations of the Sixth Cause of Action, only rescission is available to Plaintiffs as a remedy. As rescission cannot be ordered against defendant [(Wasserman)], the motion is granted."

Thereafter, the court heard plaintiffs' opening statement and further argument of counsel. The court then supplemented its tentative ruling to find that its findings on the motion for summary adjudication disposing of the fraud claims, to the extent the same evidence was presented at trial that was presented in opposition to that motion, would also preclude the securities fraud claim.

After hearing oral argument, the court issued its final ruling, confirming its initial tentative ruling. However, the court reversed itself on the supplemental tentative ruling regarding the findings made in granting summary adjudication, stating those findings "are <u>not</u> incorporated into its ruling on Defendant's Motion for Non-suit."

Thereafter, the court entered judgment in favor of Wasserman. This timely appeal follows.

## DISCUSSION

### A. *Principles of Rescission*

Plaintiffs do not dispute that because they still own the EI stock, their only remedy on their cause of action for securities fraud is rescission. A prerequisite to any claim for rescission is a contract between the parties. (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 542, p. 668.) This is because rescission requires each party to the contract to restore to the other everything of value received under the contract: "[T]o effect a rescission *a party to the contract* must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind: [¶] (a) Give notice of rescission to the party as to whom he rescinds; and [¶] (b) *Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise*, unless the latter is unable or positively refuses to do so." (Civ. Code, § 1691, italics added.)

It is undisputed that in this case there is no privity of contract between plaintiffs and Wasserman. The contract was between EI and plaintiffs.

Wasserman did not sell the stock in EI to plaintiffs and did not receive the $200,000 from them. Thus, Wasserman cannot restore to plaintiffs the $200,000 investment and place the parties in their precontractual positions. Under ordinary contract principles Wasserman cannot be held liable to plaintiffs for rescission.

Nevertheless, plaintiffs assert that under the securities laws, they were not required to prove privity of contract to obtain what they call "rescissionary" relief. This contention is unavailing.

B. *Applicable Securities Law Provisions*

Section 25401 provides: "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

Section 25504, under which plaintiffs sued Wasserman, provides for secondary liability against persons in addition to a "seller" of securities if they "control" the seller: "Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

Section 25504.1, under which plaintiffs also sued Wasserman, provides for secondary liability against persons who "assist" sellers in violations of the securities laws (commonly referred to as "aiders and abettors"): "Any person who materially assists in any violation of Section 25110, 25120, 25130, 25133, or 25401, or a condition of qualification under Chapter 2 (commencing with Section 25110) of Part 2 of this division imposed pursuant to Section 25141, or a condition of qualification under Chapter 3 (commencing with Section 25120) of Part 2 of this division imposed pursuant to Section 25141, or an order suspending trading issued pursuant to Section 25219, with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation."

Section 25501 provides the remedies available to a purchaser of securities: "Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him, *who may sue either for rescission or for damages (if the plaintiff or the defendant, as the case may be, no longer owns the security)* . . . ." (Italics added.)

Thus, under section 25501, because plaintiffs still own the securities at issue in this action, their sole potential remedy is rescission. The question presented is whether they may maintain an action for rescission under California's securities laws against someone who did not sell them the securities, i.e., against someone with whom they are not in privity of contract.

In support of their position that they may maintain an action for rescission in this case, plaintiffs cite several California cases holding that a "control person" under section 25504 and an "aider and abettor" under section 25504.1 can be sued for *damages* without privity of contract. (See *Bains v. Moores* (2009) 172 Cal.App.4th 445, 479 [91 Cal.Rptr.3d 309]; *People ex rel. Dufauchard v. O'Neal* (2009) 179 Cal.App.4th 1494, 1502–1503 [102 Cal.Rptr.3d 573]; *Apollo Capital Fund LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 253 [70 Cal.Rptr.3d 199].) However, these cases do not answer the question presented here because by definition "control persons" and "aiders and abettors" are most often *not* the sellers of the security, but only associated with the person or entity selling the security.

Plaintiffs have cited no California case, and we could locate none, allowing the remedy of *rescission* for securities fraud against a defendant *who is not in privity of contract with the purchaser.* The issue has been addressed, however, in two federal cases construing analogous federal statutes. Those cases held that rescission is not available against persons who are not the direct seller and therefore not in privity of contract with the purchaser.

C. *Federal Case Law Holds Privity Required for Rescission in Securities Fraud Claims*

■ Sections 25401, 25501, 25504 and 25504.1 are modeled after section 12(2) of the Securities Act of 1933 (15 U.S.C. § 77*l* et seq.) (the Act of 1933). (*In re Gap Stores Securities Litigation* (N.D.Cal. 1978) 79 F.R.D. 283, 307.) "[W]hen a state law is patterned after a federal law, the two are construed together." (*Moreland v. Department of Corporations* (1987) 194 Cal.App.3d 506, 512 [239 Cal.Rptr. 558].) Thus, federal cases construing federal securities laws are persuasive authority when interpreting our state law. (*Ibid.*)

*Huddleston v. Herman & MacLean* (5th Cir. 1981) 640 F.2d 534 (*Huddleston*), affirmed in part and reversed in part on other grounds in *Herman & MacLean v.*

*Huddleston* (1983) 459 U.S. 375 [74 L.Ed.2d 548, 103 S.Ct. 683], involved a class action securities action wherein the jury found the defendants, individual corporate officers and accountants who lacked privity with members of the plaintiff class, liable for securities fraud. However, some of the class members, like plaintiffs here, were still holding their securities. (*Huddleston, supra,* at p. 554.) The district court granted those class members "rescissional" relief. (*Ibid.*)

The Fifth Circuit reversed. In doing so, the court noted that the remedy of rescission is usually "limited to cases involving either privity between plaintiff and defendant or some specific fiduciary duty owed by brokers to their customers." (*Huddleston, supra,* 640 F.2d at p. 554.) "[I]f the purchaser did not buy from the defendant or if he no longer owns the security, then the parties cannot be returned to the status quo ante and Section 12(2) [of the Act of 1933] provides that damages, not rescission, is the proper remedy." (*Huddleston, supra,* at p. 555.) "If the Rule 10b-5 claimants have purchased securities on the open market and did not deal face to face with the defendants, the price the purchasers paid did not accrue directly to the defendants. The defendants cannot, in effect, return the purchase price that they never received or rescind a transaction to which they were not party." (*Ibid.,* citing *Green v. Occidental Petroleum Corp.* (9th Cir. 1976) 541 F.2d 1335, 1341–1343 (conc. opn. of Sneed, J.).)

In *McFarland v. Memorex Corp.* (N.D.Cal. 1980) 493 F.Supp. 631, the plaintiffs sued accountants in a class action for securities fraud under section 12(2) of the Act of 1933 and sought rescission. The accountants brought a motion to dismiss, arguing there was no privity between them and the plaintiffs because the plaintiffs did not purchase the securities from them. (*McFarland, supra,* at p. 648.) The district court agreed, stating, "The express remedy—rescission, or damages if the security is no longer owned—strongly suggests that section 12(2) [of the Act of 1933] should be read literally to require direct privity. For it would indeed be strange, as the accountants have been quick to note, if a victorious plaintiff could present to the accountants for repurchase securities that they never owned." (*Ibid.*) The court stated that to allow a plaintiff to pursue the remedy of rescission against someone other than the person or entity who sold the security "would let a plaintiff undo by rescission an event that never occurred . . . ." (*Ibid.*)

As in these cases, Wasserman never owned the securities, did not sell them to plaintiffs, and did not receive money from plaintiffs. Wasserman cannot return money she never received or rescind a transaction to which she was not a party.

Plaintiffs assert that we should not follow *Huddleston* and *McFarland* because they are federal cases that are "*not* precedent for this court" and did

not apply California's securities law. However, as we have noted, *ante,* federal cases construing federal securities laws are persuasive authority when interpreting our state securities law. (*Moreland v. Department of Corporations, supra,* 194 Cal.App.3d at p. 512.)

Addressing *McFarland* specifically, plaintiffs assert that case's holding has since been eroded by the United States Supreme Court's holding in *Pinter v. Dahl* (1988) 486 U.S. 622 [100 L.Ed.2d 658, 108 S.Ct. 2063] (*Pinter*) and "numerous federal cases" following *Pinter* that have expanded "the term 'seller' in § 12 [of the Act of 1933] to include more than just the person who sold the security." This contention is unavailing.

*Pinter* in fact expressly refused to expand the definition of "seller" in the way plaintiffs suggest: "We do not agree that Congress contemplated imposing [Act of 1933] § 12(1) liability under the broad terms petitioners advocate. There is no support in the statutory language or legislative history for expansion of [Act of 1933] § 12(1) primary liability beyond persons who pass title and persons who 'offer,' including those who 'solicit' offers. Indeed, [Act of 1933] § 12's failure to impose express liability for mere participation in unlawful sales transactions suggests that Congress did not intend that the section impose liability on participants collateral to the offer or sale. When Congress wished to create such liability, it had little trouble doing so." (*Pinter, supra,* 486 U.S. at p. 650.)

In *Pinter,* the Supreme Court rejected the "substantial factor" in causing the sale test employed by some federal courts to determine if a person met the definition of a "seller" under section 12 of the Act of 1933: "The deficiency of the substantial-factor test is that it divorces the analysis of seller status from any reference to the applicable statutory language and from any examination of [Act of 1933] § 12 in the context of the total statutory scheme. Those courts that have adopted the approach have not attempted to ground their analysis in the statutory language. [Citation.] Instead, they substitute the concept of substantial participation in the sales transaction, or proximate causation of the plaintiff's purchase, for the words 'offers or sells' in [Act of 1933] § 12. The 'purchase from' requirement of [Act of 1933] § 12 focuses on the defendant's relationship with the plaintiff-purchaser. The substantial-factor test, on the other hand, focuses on the defendant's degree of involvement in the securities transaction and its surrounding circumstances. *Thus, although the substantial-factor test undoubtedly embraces persons who pass title and who solicit the purchase of unregistered securities as statutory sellers, the test also would extend [Act of 1933] § 12(1) liability to participants only remotely related to the relevant aspects of the sales transaction. Indeed, it might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional*

*services, to [Act of 1933] § 12(1) strict liability for rescission. The buyer does not, in any meaningful sense, 'purchas[e] the security from' such a person."* (*Pinter, supra,* 486 U.S. at p. 651, italics added, fn. omitted.)

Plaintiffs also cite *Lennerth v. Mendenhall* (N.D. Ohio 1964) 234 F.Supp. 59 (*Lennerth*) for the proposition that rescission is available under section 12 of the Act of 1933 against persons other than the seller of the security. However, the Supreme Court in *Pinter* expressly rejected the reasoning of *Lennerth* and disapproved it and other cases that held a "seller" is anyone whose conduct was a "substantial factor" in causing the sale. (*Pinter, supra,* 486 U.S. at pp. 650–651, fn. 25.)

Plaintiffs cite *Johns Hopkins University v. Hutton* (4th Cir. 1970) 422 F.2d 1124, asserting that "[i]mplicit in the district court and the Court of Appeal decisions is that an action for rescission under section 12(2) of the 1933 Act may be maintained against persons other than the seller who owned the security." However, in doing so, plaintiffs in their opening brief do not point to any language from that opinion to support their assertion and, indeed, do not even cite a page number in making that claim. Moreover, that case does not assist plaintiffs as the court in that case found the individual held liable for rescission was a *seller* within the meaning of section 12 of the Act of 1933. (*Johns Hopkins, supra,* 422 F.2d at p. 1128 ["[t]here can be no doubt that Hutton, a broker acting through LaPiere, offered and ultimately sold to Hopkins a security . . ."].) Here, plaintiffs do not contend Wasserman qualified as a "seller" under California securities law. Further, to the extent that case could be read to impose liability for rescission against persons other than the seller of the securities, it has been disapproved by *Pinter*.

Plaintiffs also cite *Gould v. Tricon, Inc.* (S.D.N.Y. 1967) 272 F.Supp. 385 for the proposition that individuals other than sellers can be held liable for rescission. However, *Gould* did not involve the issue of privity and did not hold that persons other than sellers may be held liable for rescission under section 12 of the Act of 1933. (*Gould, supra,* 272 F.Supp. at pp. 389–390, 393; see also *Dorfman v. First Boston Corp.* (E.D.Pa. 1972) 336 F.Supp. 1089, 1092, fn. 4 [distinguishing *Gould* because it did not "involve[] the issue of privity under § 12(2) [of the Act of 1933]"].)

D. *Plaintiffs' Reliance on Out-of-state Authority Is Misplaced*

■ Plaintiffs also rely on a case from Oregon, *Metal Tech Corp. v. Metal Teckniques Co.* (1985) 74 Or.App. 297 [703 P.2d 237]. However, that case did not address the question of whether privity of contract is required for a claim for rescission. Moreover, the rescission claim addressed in that case was a contract for the sale of assets of a corporation, not securities. (*Metal Tech*

*Corp. v. Metal Techniques Co., supra,* 703 P.2d at pp. 240–241.) Indeed, in addressing the rescission claim, the court cited the basic rule of rescission that we have applied, here: " 'When a contract is rescinded *the parties* should be restored, as nearly as possible, to their situations prior to the transaction.' " (*Id.* at p. 241, italics added.)

In a counterclaim, the defendants did assert a claim for securities fraud under Oregon's state securities law, in addition to their claim for rescission. (*Metal Tech Corp. v. Metal Teckniques Co., supra,* 703 P.2d at p. 242.) However, this claim was separate from the rescission claim, and as the court noted, "[t]he parties chose to bifurcate this suit for trial and tried the counterclaim for rescission before reaching . . . the counterclaims for securities law violations and fraud." (*Ibid.*) And while the counterclaim was asserted against a corporate entity and its shareholder, the Oregon Court of Appeals also noted that the shareholder's "liability as officer and director . . . is not before us." (*Id.* at p. 244.)

E. *Secondary Liability Under Sections 25504 and 25504.1 Does Not Affect Privity Requirement*

■ Plaintiffs assert that because "control group" people and "aiders and abettors" who are not "sellers" can be held liable under sections 25504 and 25504.1, rescission can be had against these persons without privity of contract. However, those sections only address who may be held *liable,* not the *remedy* that is available against them. It is section 25501 that establishes the available remedies, stating plaintiffs may "sue either for rescission or for damages . . . ." There is nothing in section 25504 or 25504.1 that expressly or impliedly provides that privity of contract is not required for the *remedy* of rescission or that the definition of rescission is somehow different in corporate securities law than it is elsewhere.

Plaintiffs assert the "legislative intent" of the corporate securities law supports a rescissionary remedy without privity of contract under sections 25504 and 25504.1. This contention is unavailing.

In support of this position plaintiffs do not cite to the actual legislative history of those sections, but rather to the treatise Practice Under the California Securities Laws. It is true that the authors "undertook the preparation of this book primarily in order that the legislative history of the California Corporate Securities Law of 1968 and the specific intent behind many of its numerous provisions would not be lost or obscured with the passage of time." (1 Marsh & Volk, Practice Under the Cal. Securities Laws (2010) Preface, p. xxvii (rel. 30-6/02).) However, the section of that treatise that plaintiffs cite does not support their position on appeal.

Plaintiffs quote from section 14.03[7] of the treatise, which discusses the fact that the remedy of rescission in section 25501 does not require a plaintiff to prove causation as would be the case in an action for fraud seeking damages. (1 Marsh & Volk, Practice Under the Cal. Securities Laws, *supra*, § 14.03[7], pp. 14-40 to 14-41 (rel. 32-6/04).) However, it does not address whether privity is required for that remedy to be available.

Plaintiffs assert the remedy of rescission contained in section 25501 is to "make recovery for statutory securities fraud less difficult to prove than common law fraud, and was never intended to limit or eliminate a defrauded plaintiff's right to recover under Sections 25504 and 25504.1 where the plaintiff still owns the security."

■ However, while intending to minimize securities fraud, the drafters of the statutory securities law were also cognizant of the dangers of casting the net of civil liability too broadly. The Act of 1933 "attempts to provide a scheme of liability . . . that will adequately protect the investing public without undue hardship upon persons who might be potential defendants in such actions." (1 Marsh & Volk, Practice Under the Cal. Securities Laws, *supra*, § 14.01[3], p. 14-15 (rel. 36-7/2008); cf. *Boam v. Trident Financial Corp.* (1992) 6 Cal.App.4th 738, 744 [8 Cal.Rptr.2d 177] [noting the act "imposed certain restrictions" on recovery, "such as shortening the statute of limitations for bringing a statutory action and limiting the damages available"]; *California Amplifier, Inc. v. RLI Ins. Co.* (2001) 94 Cal.App.4th 102, 109 [113 Cal.Rptr.2d 915] ["The purpose of the Act in this regard is to create statutory liability that eliminates some of the elements of common law fraud, but balances this expansion of liability by placing other restrictions on recovery."].) Indeed, section 25510 explicitly directs courts not to rely on the statute's provisions to authorize private rights of action beyond those explicitly enumerated. (§ 25510 [mandating that except as "explicitly provided," no civil liability in favor of "any private party" against any "person" shall arise by "implication from or as a result of the violation of any provision of this law or any rule or order hereunder"].) "It is difficult to see how language" restricting the creation of causes of action for securities law violations "could be any more explicit than that contained in [section] 25510." (1 Marsh & Volk, Practice Under the Cal. Securities Laws, *supra*, § 14.02[2], p. 14-16 (rel. 36-7/2008).)

■ The plain language of the statute states that plaintiffs "may sue either for rescission or for damages . . . ." (§ 25501.) " ' "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." ' [Citation.] In other words, we are not free to 'give the words an effect different from the plain and direct import of the terms used.' "

(*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332 [104 Cal.Rptr.3d 219, 223 P.3d 77].) Plaintiffs have provided no evidence the Legislature intended the term "rescission" to be given anything other than its ordinary meaning. Rescission, as we have explained, *ante*, by its very definition requires a contract between the parties as it is designed to place the parties in their precontractual condition. As Wasserman did not sell the securities to plaintiffs and did not receive the purchase price from them, she cannot be made to return that purchase price to plaintiffs.

What plaintiffs in reality seek to do is hold Wasserman liable for *damages*. Plaintiffs admit they have no damages claim because they still hold the securities.

### F. *Plaintiffs' Citation to California Case Law Is Unavailing*

Plaintiffs cite *Sherman v. Lloyd* (1986) 181 Cal.App.3d 693 [226 Cal.Rptr. 495] (*Sherman*), in which a limited partner brought an action for rescission and restitution against the limited partnership he invested in, its general partner and a shareholder of the general partner, alleging the investment was a security that was not qualified as required under California law. (*Id.* at pp. 696–697.) The court granted summary judgment in favor of the plaintiff, and the defendants appealed. On appeal, the defendants asserted that because the general partner and its shareholder were not in privity of contract with the plaintiff, they could not be held liable. (*Id.* at pp. 702–703.) The Court of Appeal held that they were liable as "control group" persons under section 25504. (*Sherman*, at p. 703.)

However, *Sherman* is distinguishable. First, in holding that the plaintiff's complaint was not barred by the statute of limitations, the court found that a fiduciary relationship existed between the parties. (*Sherman, supra*, 181 Cal.App.3d at pp. 697–700.) As noted by the court in *Huddleston, supra*, 640 F.2d at page 554, the remedy of rescission is "limited to cases involving either privity [of contract] *or some specific fiduciary duty . . . .*" (Italics added.) There is no allegation here that Wasserman owed any fiduciary duty to plaintiffs. Further, *Sherman* involved a failure to qualify a security under sections 25503 and 25110. It did not allege a claim for securities fraud under section 25401.

Plaintiffs also cite *Courtney v. Waring* (1987) 191 Cal.App.3d 1434 [237 Cal.Rptr. 233], a case involving California's Franchise Investment Law (§ 31000 et seq.). However, that case does not support plaintiffs' position. It merely held that under that law, which, similar to California's securities law imposes secondary liability against persons other than the seller, the plaintiff need not successfully sue the franchise seller before pursuing a case for

secondary liability against those involved in the transaction. (191 Cal.App.3d at p. 1442.) It nowhere addressed the remedy of rescission or privity of contract. Indeed, as plaintiffs concede, rescission is not an available remedy under the Franchise Investment Law.

## DISPOSITION

The judgment is affirmed. Wasserman shall recover her costs on appeal.

Huffman, Acting P. J., and Aaron, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 27, 2011, S190827.