Filed 5/5/14  Alpineri v. TGG Management Co. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LOUIS ALPINIERI, | D064327 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00059181-CU-SL-NC) |
| TGG MANAGEMENT COMPANY, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Weintraub Law Group and Richard A. Weintraub, Amber L. Condron for the Plaintiff and Appellant.

Duckor Spradling Metzger & Wynne and Scott L. Metzger, William P. Keith for Defendants and Respondents.

Plaintiff and appellant Louis Alpinieri appeals from a judgment in favor of defendants and respondents TGG Management Company, Inc., Matthew Garrett and Trever Acers (collectively TGG) entered after the trial court sustained with leave to amend a demurrer to Alpinieri's complaint for damages under Corporations Code[1] section 25501.5, and Alpinieri elected to stand on his pleading.  Alpinieri asks us to hold based on this court's decision in *Viterbi v. Wasserman* (2011) 191 Cal.App.4th 927 (*Viterbi*) and principles of statutory interpretation that defendants, who are alleged to be unlicensed broker-dealers, are "sellers" of securities within the meaning of section 25501.5 even if they did not actually hold and transfer title to the securities to Alpinieri. We conclude under section 25501.5's ordinary meaning, defendants' liability for damages requires that Alpinieri plead and prove privity of contract.  Because Alpinieri's complaint reveals he did not purchase the securities from TGG, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In setting out the background facts, we accept as true the properly pleaded and material allegations of Alpinieri's operative first amended complaint.  (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 866; *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 401.)

In April 2009, TGG, an unlicensed broker-dealer, approached Alpinieri and began soliciting him via phone, email and in person regarding an investment opportunity in MachineTek, LLC (MachineTek).  In June 2009, TGG gave Alpinieri a written proposal

---

[1]     Statutory references are to the Corporations Code unless otherwise specified.

2

for TGG to provide a corporation, Imeriti, Inc., business acquisition advisory services.  In part, TGG proposed it "will advise the Company [Imeriti, Inc.] and make recommendations but will not make decisions on behalf of the Company."[2]  In July 2009, Alpinieri signed a letter of intent to invest.  TGG eventually persuaded Alpinieri to invest $400,000 in "preferred membership units" of MachineTek, and in August 2009, Alpinieri and his son entered into a subscription agreement with MachineTek.  Alpinieri's son invested $200,000 in MachineTek, making Alpinieri and his son's total investment $600,000.  TGG assisted in the negotiation and preparation of both the July 2009 letter of intent and the August 2009 subscription agreement, and advised Alpinieri how much money he should invest.  Alpinieri incurred $36,520 in legal fees, and paid TGG a $28,000 commission in connection with the investment.

Alpinieri never received any distributions or return, and the MachineTek securities are essentially worthless.  As of the end of 2012, Alpinieri had sold his MachineTek units to his son.

Alpinieri and his son filed a complaint against TGG asserting causes of action for damages from the sale of securities under section 25501.5 of the Corporate Securities Law of 1968 (§ 25000 et seq.; the Act), rescission and negligent misrepresentation. Alpinieri attached as exhibits to the complaint his June 2009 agreement with TGG, the

---

[2]    That proposal, which is addressed to Alpinieri and attached to the first amended complaint as an exhibit, reads in part:  "TGG Capital (the 'Advisor') is pleased to act as a financial advisor to Imeriti, Inc. (the 'Company[]').  The purpose of this letter is to *propose a course of action* to provide business acquisition advisory services under the terms and conditions set forth in this agreement . . . ."  (Italics added.)  The document is unsigned.

July 2009 letter of intent, and the August 2009 subscription agreement. The subscription agreement states in part: "Subject to the terms and conditions of this Agreement, Subscribers [Alpinieri and his son] agree to purchase from Company [MachineTek], and Company agrees to sell and issue to Subscribers, 300 preferred membership units in Company . . . ."

TGG demurred to the complaint. In part it argued plaintiffs failed to state a cause of action under section 25501.5 because TGG did not directly sell securities to plaintiffs; that the plain language of the statute—providing a cause of action for a person "who purchases a security from" an unlicensed broker-dealer—required plaintiffs to prove strict privity between buyer and seller.

Alpinieri filed a first amended complaint omitting his son as a plaintiff and asserting a single cause of action for "damages resulting from the sale of securities" under section 25501.5. Alpinieri alleged TGG "sold securities in the form of membership units" and he invested in MachineTek as a result of TGG's "solicitation and sales tactics . . . ." He alleged that at the time of his investment, TGG and its principals were not registered broker-dealers but nevertheless "were acting as broker dealers and effecting transactions within the meaning of . . . [section] 25004 . . . ."[3] Alpinieri alleged

---

[3] Alpinieri alleges TGG acted as a broker-dealer and was effecting transactions within the meaning of section 25004 by "contacting plaintiff directly via telephone and email and soliciting him regarding the potential investment in MachineTek; [¶] . . . sending follow-up emails to plaintiff soliciting him to invest in MachineTek; [¶] . . . providing plaintiff with the terms of the potential investment in MachineTek, including interest rates and security; [¶] . . . instructing plaintiff as to how to use his retirement accounts to invest in MachineTek; [¶] . . . assisting in the negotiation and preparation of

4

that as a result of TGG's violation of section 25501.5, he suffered damages in the amount of $464,520 plus interest. The first amended complaint attached the same exhibits including the August 2009 subscription agreement.

TGG again demurred to the first amended complaint, arguing that any ambiguity in the complaint's allegations as to the seller were resolved by the description of the transaction in the subscription agreement, which made clear the seller was MachineTek, not TGG. It also argued Alpinieri had failed to allege damages with reasonable precision and particularity by omitting the purchase and sale price of the securities.

In opposition, Alpinieri argued TGG's interpretation of section 25501.5 was illogical; that ambiguity existed as to the true meaning of the statute and thus its interpretation required some analysis of legislative history. He argued section 25401 recognized that a broker-dealer was an owner's agent, and legislative analysis of section 25501.5 showed that the definition of a broker-dealer did not include "any person insofar as he buys or sells securities for his own account." In part, Alpinieri argued that other than in limited circumstances such as an initial public offering, a broker-dealer acts as an agent of a securities issuer and never owns the security before selling it to the eventual

all documents necessary to effectuate plaintiff's investment in MachineTek; [¶] . . . instructing plaintiff to send payments for the investment in MachineTek directly to defendants; [¶] . . . acting as plaintiff's main contact at MachineTek regarding plaintiff's investment therein; and [¶] . . . receiving a commission of $28,000 as a result of plaintiff's investment." (Some capitalization omitted.) If an individual in the course of his or her business participates in negotiations that involve the purchase or sale of securities, that person is "effecting or attempting to effect a transaction . . . in such securities and is a 'broker-dealer.' " (*Nationwide Investment Corp. v. California Funeral Service, Inc.* (1974) 40 Cal.App.3d 494, 502, italics omitted; see *Lyons v. Stevenson* (1977) 65 Cal.App.3d 595, 605 [any participation in the negotiations, however slight, will bring an individual within the definition of a securities broker].)

5

shareholder, thus as a practical matter if TGG's interpretation were followed, unlicensed brokers would never be held liable under the statute.

TGG replied that Alpinieri had not remedied his inability to plead privity. It asserted section 25501.5's text was not ambiguous but in harmony with the rest of the Act, thus there was no need to go beyond the plain language of section 25501.5, which imposed liability using the same phrase " 'purchases . . . from' " or " 'sells . . . to' " that had been long held to require strict privity in connection with section 25501. TGG argued the Act's definition of broker-dealer and the legislative history, though irrelevant to interpretation, did not support Alpinieri's arguments. It also pointed out that other provisions of the Act (§§ 25504, 25504.1) expressly impose liability on actors beyond direct buyers and sellers, but no comparable provision does so for section 25501.5.

The trial court sustained the demurrer, ruling Alpinieri's first amended complaint did not allege he purchased a security from or sold a security to an unlicensed broker-dealer, and thus did not state a cause of action under section 25501.5. It gave Alpinieri leave to amend, however, finding it reasonable that he could state some cognizable claim against TGG. Alpinieri thereafter elected not to file a second amended complaint. He timely appealed from the ensuing judgment of dismissal.

DISCUSSION

I. *Standard of Review*

On review of an order sustaining a demurrer, we independently review the trial court's ruling and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal.,*

6

*Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We take as true the complaint's properly pleaded and implied factual allegations, but not mere contentions or assertions contradicted by judicially noticeable facts. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

"Where, as here, the ' "plaintiff is given the opportunity to amend his . . . complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he . . . can." ' " (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 792, quoting *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091, abrogated on other grounds in *Martinez v. Combs* (2010) 49 Cal.4th 35, 66; see also *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 408.) "However, '[t]he issue of leave to amend is always open on appeal, even if not raised by the plaintiff. [Citation.]' [Citation.] '[L]eave to amend is properly granted where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations.' [Citation.] 'The plaintiff has the burden of proving that an amendment would cure the defect.' " (*Moncada*, at p. 792, quoting *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746 & *Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1081.)

When a ruling on a demurrer is based on an interpretation of statutory provisions, we likewise review those issues de novo. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331, 1336.) " 'As in any case involving

7

statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106; see also *Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 (*Diamond Multimedia*); *County of San Diego v. Alcoholic Beverage Control Appeals Bd.* (2010) 184 Cal.App.4th 396, 401.) In cases of uncertain meaning, we may consider the consequences of a particular interpretation. (*Franchise Tax Board v. Superior Court* (2013) 221 Cal.App.4th 647, 660.)

II. *Civil Liability Schemes of the Corporate Securities Law of 1968*

As judicial construction of laws should not be conducted in isolation, but in view of the law's entire scheme (*Los Angeles County Metropolitan Transp. Authority v. Alameda Produce Market, LLC*, *supra*, 52 Cal.4th at p. 1106), we review some of the

8

civil liability provisions of the Act preexisting the enactment of section 25501.5. The Act regulates securities transactions and contains provisions describing unlawful practices in the purchase or sale of securities. (*Diamond Multimedia*, *supra*, 19 Cal.4th at p. 1053; *California Amplifier, Inc. v. RLI Ins. Co.* (2001) 94 Cal.App.4th 102, 108.) "The primary objective of the Corporate Securities Law was the 'creation of a balanced regulatory scheme to cope with the problems of modern securities markets in California.' [Citation.] . . . [A]ll offers and sales of securities in California must be qualified with the Commissioner of the [Department of Corporations] (the Commissioner) unless specifically exempted. [Citation.] Only broker-dealers may sell securities, unless exempted. [Citation.] Deceptive practices, such as utilizing false or misleading statements in the purchase or sale of securities, are prohibited." (*People v. Cole* (2007) 156 Cal.App.4th 452, 472.)

The Act has civil enforcement mechanisms in addition to criminal prosecution and administrative actions. (*People ex rel. DuFauchard v. O'Neal* (2009) 179 Cal.App.4th 1494, 1501; see also *People v. Butler* (2012) 212 Cal.App.4th 404, 413; *California Amplifier, Inc. v. RLI Ins. Co.*, *supra*, 94 Cal.App.4th at p. 109.) For example, section 25400 prohibits "any person" from undertaking specified market manipulation activities (§ 25400, subd. (a)), and if that person is a "broker-dealer or other person selling or offering for sale" securities, it prohibits that person from making false or misleading

9

statements to assist the sale of a security.  (§ 25400, subd. (d);[4] see *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1102; *Murphy v. BDO Seidman, LLP* (2003) 113 Cal.App.4th 687, 705.)  Investors harmed by a violation of this statute have an express, private right of action under section 25500, which states in part:  "Any person who willfully participates in any act or transaction in violation of Section 25400 shall be liable to any other person who purchases or sells any security at a price which was affected by such act or transaction for the damages sustained by the latter as a result of such act or transaction." (§ 25500; *Mirkin v. Wasserman*, at p. 1102; *Kamen v. Lindly* (2001) 94 Cal.App.4th 197, 202.)  These provisions are modeled after subsections of the Securities Exchange Act of 1934 (15 U.S.C. § 78i).  (*Kamen*, at pp. 202-203.)

Additionally, section 25401 makes it unlawful for "any person" to offer or sell a security in this state by means of written or oral untrue statements or omissions of material fact.  (See *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 252 (*Apollo Capital*).)  Section 25501 creates civil liability for violations of section 25401.  (*Arei II Cases* (2013) 216 Cal.App.4th 1004, 1013; *Moss v. Kroner* (2011) 197 Cal.App.4th 860, 873; *Viterbi*, *supra*, 191 Cal.App.4th at p. 937; *Bains v. Moores* (2009) 172 Cal.App.4th 445, 477; *California Amplifier, Inc. v. RLI Ins.*

---

4     More fully, section 25400, subdivision (d) makes it unlawful for "a broker-dealer or other person selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading."

*Co.*, *supra*, 94 Cal.App.4th at p. 109 [fraudulent practices sections of the Act each have a corresponding section that establishes a private remedy for damages; the Act's purpose in this regard is to create statutory liability that eliminates some of the elements of common law fraud but balances this expansion of liability by placing other restrictions on recovery].)  Section 25501 provides in part:  "Any person who violates Section 25401 *shall be liable to the person who purchases a security from him* . . . who may sue either for rescission or for damages (if the plaintiff or the defendant, as the case may be, no longer owns the security), unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know (or if he had exercised reasonable care would not have known) of the untruth or omission."  (Italics added.)

The California Supreme Court addressed section 25501's language "shall be liable to the person who purchases a security from him" in *Mirkin v. Wasserman*, *supra*, 5 Cal.4th 1082.  The court in *Mirkin* pointed out that the Legislature used these words so as to condition liability on privity of contract.  (*Id*. at p. 1104.)  It did so in rejecting the plaintiffs' argument in that case that liability under different sections—sections 25400 and 25500—required privity of contract:  "Nor is it correct, as plaintiffs also suggest, that liability under sections 25400 and 25500 requires privity of contract between the plaintiff and the defendant.  The Legislature . . . knew how to write a statute that conditioned liability on privity.  In section 25501 the Legislature did just that in these words:  'Any person who violates Section 25401 *shall be liable to the person who purchases a security from him or sells a security to him* . . . .'  (§ 25501, italics added.)  Section 25500, in

11

contrast, contains no such limitation; it provides more broadly that '[a]ny person who willfully participates in any act or transaction in violation of Section 25400 *shall be liable to any other person who purchases or sells any security* at a price which was affected by such act or transaction . . . .' (§ 25500, italics added.) In other words, '[u]nder Section 25501 the defendant is only liable to the person with whom he deals; whereas, under Section 25500 the defendant may be liable to any person trading in the market . . . .' " (*Mirkin v. Wasserman*, *supra*, 5 Cal.4th at p. 1104.)

Appellate courts and some federal district courts have likewise concluded, based on section 25501's plain language, that civil liability under section 25501 for a violation of section 25401 requires a showing of privity between the purchaser and seller and thus limits recovery to plaintiffs who actually purchased the security from the defendant. (*Apollo Capital*, *supra*, 158 Cal.App.4th at pp. 252-253 [section 25501 "on its face requires privity between the plaintiff and the defendant"]; see also *People ex rel. DuFauchard v. O'Neal*, *supra*, 179 Cal.App.4th at pp. 1502-1503 [section 25501 "by its terms, limits recovery to plaintiffs who purchased the security from the defendant. It does not provide for civil liability of a broker-dealer who acted as a placement agent for the seller, but did not actually sell the security to the plaintiffs"]; *California Amplifier, Inc. v. RLI Ins. Co.*, *supra*, 94 Cal.App.4th at p. 109 [section 25501 extends liability to some negligent conduct, but retains the privity requirement from common law fraud]; see, e.g., *Bains v. Moores*, *supra*, 172 Cal.App.4th at p. 479 [suggesting in dicta that privity is required between buyer and seller under section 25501], citing *In re ZZZZ Best Securities Litigation* (C.D.Cal., July 23, 1990, No. CV87-3574) 1990 WL 132715, *17;

12

*Jackson v. Fischer* (N.D.Cal. 2013) 931 F.Supp.2d 1049, 1063; *Lubin v. Sybedon Corp.* (S.D.Cal. 1988) 688 F.Supp. 1425, 1453 [liability under section 25401 is limited to actual sellers, and thus causes of action provided for in sections 25501, 25504, 25504.1 and 25504.2, which by their terms are derived from section 25401, are defeated by failure to show direct privity].)  "The liability created by section 25501 is sometimes referred to as primary or direct because it applies to a person who is directly or primarily responsible for violating section 25401 as a consequence of selling or buying securities by means of misrepresentations or omissions of material fact."  (*Arei II Cases*, *supra*, 216 Cal.App.4th at p. 1013.)

In addition to primary or direct liability, the Act via sections 25504 and 25504.1 imposes joint and several liability on specified persons based on his or her relation or connection to a person primarily liable under section 25501, including "[e]very person who directly or indirectly controls a person liable under . . . section 25501" and "every broker-dealer or agent who materially aids in the act or transaction constituting the violation . . . ."  (§ 25504; see *Moss v. Kroner*, *supra*, 197 Cal.App.4th at p. 873 [referring to persons liable under section 25504 as "secondary actors"]; *Arei II Cases*, *supra*, 216 Cal.App.4th at p. 1013; *Hellum v. Breyer* (2011) 194 Cal.App.4th 1300, 1310-1311; *Bains v. Moores*, *supra*, 172 Cal.App.4th at p. 477.)  Under section 25504, such persons are "liable jointly and severally with and to the same extent as such person [liable under section 25501]."  (§ 25504; see *Moss v. Kroner*, at p. 873.)  Another section imposes joint and several liability on any person who "materially assists" in any violation of section 25401 "with intent to deceive or defraud . . . ."  (§ 25504.1; *Arei II Cases*, at p.

13

1013 [liability under section 25504.1 is aider and abettor liability]; *Moss v. Kroner*, at p. 873; *Viterbi*, *supra*, 191 Cal.App.4th at p. 936.) Such actors are "jointly and severally liable with any other person liable under this chapter for such violation." (§ 25504.1.)

### III. *Section 25501.5*

In 2004, the Legislature enacted section 25501.5. (Stats. 2004, ch. 575, § 2, p. 3553; see *People v. Cole*, *supra*, 156 Cal.App.4th at p. 477, fn. 23.) Section 25501.5 provides in part: "A person who purchases a security from or sells a security to a broker-dealer that is required to be licensed and has not, at the time of the sale or purchase, applied for and secured from the commissioner a certificate under Part 3 (commencing with Section 25200), that is in effect at the time of the sale or purchase authorizing that broker-dealer to act in that capacity, may bring an action for rescission of the sale or purchase or, if the plaintiff or the defendant no longer owns the security, for damages." (§ 25501.5, subd. (a)(1).)[5]

On rescission and tender of the security, a purchaser may recover the consideration he or she paid plus interest at the legal rate, less the amount of any income received on the security. (§ 25501.5, subd. (a)(2).) The purchaser who no longer owns the security may recover damages in an amount equal to the difference between (a) the price at which the security was bought plus interest at the legal rate from the date of purchase and (b) the value of the security at the time the plaintiff disposed of it, plus the

---

[5] Because Alpinieri was a purchaser of the securities at issue in this case, we do not further discuss the provisions of section 25501.5 relating to a civil action on behalf of a seller of securities to an unlicensed broker-dealer.

amount of any income plaintiff received on the security. (§ 25501.5, subd. (a)(4).) Section 25501.5 grants the court discretion to award reasonable attorney fees and costs to a prevailing party. (§ 25501.5, subd. (b).)

IV. *Section 25501.5 Expressly Requires Privity of Contract as a Condition to Civil Liability Against an Unlicensed Broker*

As TGG points out, no California state court has yet interpreted the provisions of section 25501.5, or decided whether liability under that statute requires privity of contract.[6] We do so here, and our construction of section 25501.5 goes no further than the ordinary meaning of its language. As the California Supreme Court in *Mirkin v. Wasserman* states, when it comes to civil liability under the Act, the Legislature knows how to write a statute so as to condition liability on privity of contract. (*Mirkin v. Wasserman*, *supra*, 5 Cal.4th at p. 1104.) The Legislature's use of the commonplace phrases "purchases a security from" and "sells a security to" demonstrates it intended a

---

[6]  In *Jackson v. Fischer*, *supra*, 931 F.Supp.2d 1049, the district court addressed a motion to dismiss the plaintiff's claim of a violation of section 25501.5 against numerous defendants, including directors and officers of a company in which the plaintiff invested via an alleged broker or agent, Fischer. (*Jackson*, at pp. 1053-1055, 1058.) The court, in dicta, held the plaintiff failed to state a "direct claim for relief" against the directors and officers under section 25501.5 because she did not allege she purchased the securities from them or that they acted in the capacity of a broker. (*Jackson*, at p. 1065.) Observing the plaintiff's complaint suggested defendants were "secondarily liable" under the statute, the district court stated courts were "divided on the question whether a claim of secondary liability is cognizable under section 25501.5." (*Ibid*.) On this point, the district court discussed both *Viterbi v. Wasserman*, *supra*, 191 Cal.App.4th 927, and *Moss v. Kroner*, *supra*, 197 Cal.App.4th 860, neither of which address liability under section 25501.5. (*Jackson*, 931 F.Supp.2d at pp. 1065-1066.) Ultimately, the district court granted the plaintiff leave to amend to, inter alia, clarify the basis on which the defendants were charged with liability under the statute. (*Id*. at p. 1066.)

15

civil action for rescission or damages under section 25501.5 be available only to a person who transacts directly with an unlicensed broker-dealer, that is, who is in privity with that unlicensed broker-dealer. We see no indication in section 25501.5's language any intent other than to restrict a claim for rescission or damages against one who is directly responsible for violating the statute by virtue of selling the security. Because no contrary legislative intent appears in the statute, there is no basis to disregard literal construction. (See *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659.)

Our conclusion is further compelled by the fact that the Legislature knows how to write a statute that does *not* require privity of contract, that is, one that creates liability for merely "offering" to sell a security (§ 25400, subd. (d) [applying to a "broker-dealer or other person selling *or offering for sale*" stock affected by a defendant's unlawful market manipulation activity (italics added)]; *StorMedia Incorporated v. Superior Court* (1999) 20 Cal.4th 449, 461 [privity is not required for civil liability predicated on a violation of section 25400 directed at market manipulation].) We decline to import "offer to sell" or other language that would broaden the scope of section 25501.5, when the language used is otherwise clear and unambiguous. When the words of a statute are clear, we will not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history; " 'we are not free to "give the words an effect different from the plain and direct import of the terms used." ' " (*Viterbi*, *supra*, 191 Cal.App.4th at pp. 942-943; see also *Diamond Multimedia*, *supra*, 19 Cal.4th at p. 1054 [it is not our function to insert language omitted by the Legislature in interpreting a statute].)

Significantly, section 25501.5's enactment occurred years after our state's high court in *Mirkin v. Wasserman*, *supra*, 5 Cal.4th 1082 expressly interpreted the same phrase, "purchases a security from," in other civil liability provisions of the Act to require privity of contract. At least one other appellate court had reached the same conclusion in view of such language. (*California Amplifier, Inc. v. RLI Ins. Co.*, *supra*, 94 Cal.App.4th at p. 109 ["Sections 25501 and 25502 extend liability to some negligent conduct, but retain the privity requirement from common law"]; accord, *Bowden v. Robinson* (1977) 67 Cal.App.3d 705, 712 ["The Legislature, in section 25503, by the words 'any person acquiring from him' has required privity, with some exceptions, as a condition of recovery."].) It is well established that "[t]he Legislature is deemed to be aware of existing laws and judicial decisions construing the same statute in effect at the time legislation is enacted, and to have enacted and amended statutes ' "in the light of such decisions as have a direct bearing upon them." ' " (*Viking Pools, Inc. v. Maloney* (1989) 48 Cal.3d 602, 609; see also *Bailey v. Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [" 'It is assumed that the Legislature has in mind existing laws when it passes a statute.' "], superseded by statute on other grounds as stated in *Emerson Electric Co. v. Superior Court* (1997) 16 Cal.4th 1101, 1109; *Estate of McDill* (1975) 14 Cal.3d 831, 839; *State Farm General Ins. Co. v. JT's Frames, Inc.* (2010) 181 Cal.App.4th 429, 442; *People v. Bradley* (1967) 248 Cal.App.2d 887, 890.) We conclude the Legislature in 2004 necessarily understood that courts would interpret a civil liability provision under the Act containing the "purchases a security from" language as requiring privity of contract as a prerequisite to such liability. Had the Legislature meant to permit an action

17

against an unlicensed broker-dealer who did not actually sell the security but who merely offered it for sale or solicited its sale, it would have used words to that effect. (*Tracy v. Municipal Court* (1978) 22 Cal.3d 760, 764.)

Thus, we give effect to section 25501.5's plain meaning, unless it can be demonstrated the natural and common import of a statute's language is repugnant to the general purview of the act or for some other compelling reason should be disregarded. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219; *Poway Unified School Dist. v. Chow* (1995) 39 Cal.App.4th 1478, 1482-1483.) "In the absence of compelling countervailing considerations, we must assume that the Legislature 'knew what it was saying and meant what it said.' " (*Tracy v. Municipal Court*, *supra*, 22 Cal.3d at p. 764; *Poway Unified School Dist.*, at p. 1483.)

As we explain, Alpinieri has not shown compelling considerations require a different meaning. We address his arguments seriatim.

A. Viterbi *Does Not Compel a Different Interpretation of Section 25501.5*

Alpinieri urges us to conclude, based on this court's decision in *Viterbi*, *supra*, 191 Cal.App.4th 927, that as unlicensed broker-dealers, defendants are sellers of securities for purposes of section 25501.5 even if they did not hold title to the securities. He maintains *Viterbi* establishes TGG is a "seller" because it solicited a purchase of securities out of a desire to serve its own financial interest. According to Alpinieri, *Viterbi* adopted a definition of "seller" derived from the federal securities laws that "gives full and complete meaning" to section 25004's definition of a broker-dealer, whereas TGG's

definition requiring privity of contract would permit a civil action under section 25501.5 only against dealers and not brokers, who assertedly never hold title to the securities.

Additionally, pointing out he sold his units to his son and no longer owns the securities, Alpinieri argues his action for compensatory damages under section 25501.5 does not require direct privity of contract. For this proposition, he likewise relies on a proposition in *Viterbi*, *supra*, 191 Cal.App.4th at p. 938, acknowledged by *Moss v. Kroner*, *supra*, 197 Cal.App.4th 860, that privity may not be required when a party can sue for damages. Alpinieri points to *Viterbi*'s reliance on the Fifth Circuit Court of Appeal's decision in *Huddleston v. Herman & MacLean* (5th Cir. 1981) 640 F.2d 534, 555 (affd. in part & revd. in part on other grounds, 459 U.S. 375).

The question in *Viterbi* was whether plaintiffs, who still owned the securities at issue, could obtain the remedy of rescission against an allegedly *secondarily* liable defendant with whom they were not in privity of contract. (*Viterbi*, *supra*, 191 Cal.App.4th at p. 937.) There, it was undisputed that the defendant analyst did not sell the securities to plaintiffs. (*Id*. at p. 930.) Plaintiffs had sued the defendant as a "control person" and also as an "aider and abettor" under sections 25504 and 25504.1, and sought to rescind the transaction under section 25501. (*Viterbi*, at p. 936.) Looking to federal authorities addressing section 12 of the Securities Act of 1933 (the 1933 Act; 15 U.S.C. § 77a et seq.) (*Viterbi*, at p. 937), this court concluded there was no basis for that remedy, as rescission "by its very definition requires a contract between the parties as it is designed to place the parties in their precontractual condition." (*Viterbi*, at pp. 937, 943.)

19

In reaching this conclusion, *Viterbi* relied on the Fifth Circuit Court of Appeal's decision in *Huddleston* and another federal case from a California district court holding rescission was not an available remedy for defendants alleged to have committed securities fraud who lacked direct privity with the plaintiffs. (*Viterbi*, *supra*, 191 Cal.App.4th 927, citing *Huddleston v. Herman & MacLean*, *supra*, 640 F.2d at p. 555 ["[I]f the purchaser did not buy from the defendant or if he no longer owns the security, then the parties cannot be returned to the status quo ante and Section 12(2) [of the 1933 Act] provides that damages, not rescission, is the proper remedy."]; *McFarland v. Memorex Corp.* (N.D.Cal. 1980) 493 F.Supp. 631, 648 [section 12(2) of the 1933 Act should be read literally to require direct privity; to allow a plaintiff to rescind a transaction against someone other than the person or entity who sold the security would let a plaintiff "undo . . . an event that never occurred . . . ."].)

*Viterbi* rejected the plaintiffs' assertion that the holding of *McFarland* had been eroded by the U.S. Supreme Court in *Pinter v. Dahl* (1988) 486 U.S. 622, which plaintiffs claimed had expanded the term "seller" in section 12(1) of the 1933 Act. (*Viterbi*, *supra*, 191 Cal.App.4th at p. 939.) This court explained that, in fact, *Pinter* had declined to apply a "substantial factor" test to expand the definition of a "seller" in the 1933 Act beyond its statutory language. (*Viterbi*, at p. 939, citing *Pinter v. Dahl*, 486 U.S. at p. 650.) Thus, this court found unavailing the plaintiffs' argument that the term

"seller" under section 12 of the 1933 act included more than just the person who sold the security. (*Viterbi*, at p. 939.)[7]

Viterbi does not bear on the interpretation of section 25501.5 or the prerequisites for liability under that section. Both *Moss* and *Viterbi* examine whether rescission may be had against *secondary actors* such as control persons or persons who aid and abet sellers under different provisions of the Act. (*Viterbi*, *supra*, 191 Cal.App.4th at pp. 936-937; *Moss v. Kroner*, 197 Cal.App.4th at pp. 869-870.) Thus, they address the availability of a remedy Alpinieri does not seek here, as he alleges he sold his securities and suffered damages as a consequence. Nor does *Viterbi* purport to adopt a definition of the word "seller" for purposes of California securities laws, much less a definition that would apply to the statute at issue here; it merely acknowledged the scope of *Pinter's* holding in addressing the plaintiffs' arguments. If any lesson from *Viterbi* applies, it is in favor of reading section 25501.5 as requiring direct privity of contract. That is, if rescission under the Act is available only when a plaintiff and defendant are in privity of

---

[7] We recognize that the court in *Moss* expressly disagreed with *Viterbi* and came to the opposite conclusion. (*Moss v. Kroner*, *supra*, 197 Cal.App.4th at pp. 875, 878-879.) The court in *Moss* held that "as long as primary liability is stated or established with the privity required by section 25501 and a violation of section 25401, secondary liability may also exist under sections 25504 and 25504.1 for others who participated in the violation in the specific roles listed in those sections without any further need for privity between those secondarily liable actors and the plaintiff." (*Moss*, at p. 875.) *Moss*, however, makes clear that privity is required to establish the underlying primary liability under section 25501, which contains the same "purchases a security from" language as section 25501.5. (*Moss*, at p. 875 ["The need for privity stems from the liability derived from § 25501 which the courts have uniformly interpreted to require privity. . . . The person alleged to be controlled by the defendants must be alleged to be in privity with the plaintiffs."].)

contract as *Viterbi* holds, a civil liability provision granting that remedy would logically include a direct privity requirement.

More importantly, the statute at issue in *Pinter*, section 12(a) of the 1933 Act, is critically different than section 25501.5. Section 12(a) provides: "Any person who—(1) *offers or sells* a security in violation of section 77e of this title . . . shall be liable, subject to subsection (b) of this section, to the person purchasing such security from him . . . ." (15 U.S.C. § 77l(1), italics added; see *Pinter v. Dahl*, *supra*, 486 U.S. at p. 627, fn. 4.) Thus, *Pinter* construed a statutory "seller" under the 1933 Act to include "at least some persons who urged the buyer to purchase" (*Pinter v. Dahl*, at p. 644; see also *Apollo Capital*, *supra*, 158 Cal.App.4th at p. 253) and held, based on the language and purpose of section 12(a), "liability extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." (*Pinter v. Dahl*, at p. 647.) Section 25501.5, of course, contains no "offer to sell" language and as stated, we will not import such a term where the statutory language is otherwise clear.

We acknowledge that California securities laws are generally patterned after federal law, and federal constructions are useful to interpreting state law. (*Viterbi*, *supra*, 191 Cal.App.4th at p. 937; *Oak Industries, Inc. v. Foxboro Co.* (S.D.Cal. 1984) 596 F.Supp. 601, 606.) When California law is modeled on federal laws, "federal decisions interpreting substantially identical statutes are unusually strong persuasive precedent on construction of our own laws." (*Kamen v. Lindly* (2001) 94 Cal.App.4th 197, 203; *Apollo Capital*, *supra*, 158 Cal.App.4th at p. 253.) But the language of section 25501.5 is not

22

"substantially identical" or even parallel to section 12 of the 1933 Act. And Alpinieri has not pointed to any specific provision in the federal securities laws on which section 25501.5 is based. (Compare, *Kamen v. Lindly*, at pp. 202-203 [pointing out section 25500 was modeled on, and "precisely parallels," section 9, subsection (e) of the Securities Exchange Act of 1934].) In sum, neither *Viterbi*, *supra*, 191 Cal.App.4th 927 nor *Pinter v. Dahl*, *supra*, 486 U.S. 622 compel a different interpretation of section 25501.5.

B. *The Act's Definition of Broker-Dealer Does Not Render Section 25501.5 Ambiguous*

We reject the notion that the definition of a broker-dealer in the Act renders section 25501.5's "purchases a security from" language ambiguous. Alpinieri contends that an interpretation conditioning an unlicensed broker-dealer's liability under section 25501.5 on privity of contract will render the statute meaningless, as only dealers who sell directly to their customers will be liable. Alpinieri provides no authority for the proposition that brokers act only as middlemen, and never sell securities directly to purchasers.

The Act defines a broker-dealer as not only one whose regular business is to effect transactions in securities for another person's account, but also to effect transactions in securities for *his or her own account*.[8] Thus, the Legislature expressly contemplated that

---

8    A "broker-dealer" is "any person engaged in the business of effecting transactions in securities in this state for the account of others or for his own account." (§ 25004, subd. (a).) The definition expressly excludes "[a]ny other issuer"; "[a]n agent, when an employee of a broker-dealer or issuer"; and "[a]ny person insofar as he buys or sells

23

broker-dealers would transact directly with purchaser or sellers. (See 1 Marsh & Volk, Practice Under the California Securities Laws (2001) § 13.02[3][b], pp. 13-10 [acknowledging definition]; see *Arei II Cases*, *supra*, 216 Cal.App.4th at p. 1014 [California Supreme Court relies on this treatise as authoritative].) The fact that a civil action for rescission or damages under section 25501.5 will not lie against an unlicensed broker-dealer who merely assists or participates in a sale of security without actually transacting with the plaintiff does not make the phrase "purchases a security from" unclear or reasonably susceptible to more than one meaning. (See *County of San Diego v. Alcoholic Beverage Control Appeals Bd.*, *supra*, 184 Cal.App.4th at p. 401 [extrinsic sources are properly considered when statutory language is reasonably susceptible of more than one meaning].)

Nor does it necessarily lead to an unreasonable or absurd result. An unlicensed broker-dealer who does not directly transact with a purchaser may still be subject to civil liability for other wrongdoing, such as market manipulation under section 25400, subdivision (d) via section 25500 [civil liability for "any person" who willfully participates in violation of section 25400]; see *Diamond Multimedia*, *supra*, 19 Cal.4th at p. 1040; *Kamen v. Lindly*, *supra*, 94 Cal.App.4th at pp. 201-203.) The unlicensed broker may be subject to joint and several civil liability for securities law violations if he or she "directly or indirectly controls" a person liable, or aids and abets certain violations with knowledge or intent to do so. (§§ 25504 [applicable to "[e]very person who directly or

securities for his own account, either individually or in some fiduciary capacity, but not as part of a regular business." (§ 25004, subd. (a)(1), (2) & (4).)

indirectly controls" a person liable under section 25501 (anti-fraud) or 25503 (qualification-violation) provisions], 25504.1 [applicable to "[a]ny person who materially assists" in specified violations with intent to deceive or defraud]; see *Arei II Cases*, *supra*, 216 Cal.App.4th at pp. 1013-1015 [such assistance "may take the form of aiding in the preparation of offering documents relied upon by investors, communicating misrepresentations directly to investors, or otherwise playing a material, facilitating role in the act"; section 25504.1 "imposes collateral liability upon persons who materially assist in a violation of section 25401 regardless of their business or legal relationship to the primary violator"].) These provisions admittedly contain more stringent standards of proof as to intent or knowledge, but we presume the Legislature was aware of that when it enacted section 25501.5 and believed purchasers of securities would be adequately protected by these provisions when dealing with unlicensed broker-dealers involved indirectly in an unlawful transaction. Alpinieri had an opportunity to, but declined, to amend his complaint to attempt to state a cause of action under any of these provisions.

C. *Legislative History is Not Relevant Given the Lack of Ambiguity*

Alpinieri contends we should consider section 25501.5's legislative history, which supports his interpretation; that TGG's interpretation of section 25501.5 as requiring privity of contract defies maxims of statutory construction and frustrates the legislature's purpose in enacting section 25501.5. He argues the history shows the Legislature intended to target brokers who act not as principals but as agents on the account of others, and did not contemplate requiring the unlicensed broker-dealer to transfer title of the

25

security for liability under the statute.[9]  Alpinieri reiterates that under a definition requiring privity of contract, citizens would be denied a private cause of action under section 25501.5 because in practical application, no unlicensed broker-dealer, investment advisor, or agent would be liable.

But, "[c]onsideration of extrinsic aids to statutory construction is proper only if a statute is ambiguous."  (*StorMedia Incorporated v. Superior Court*, *supra*, 20 Cal.4th at p. 459; *Diamond Multimedia*, 19 Cal.4th at p. 1046 [if statute is clear and unambiguous there is no need for judicial construction and the court may not engage in it].)  Having concluded there is no ambiguity in section 25501.5, either alone or in context with other

---

[9]      Specifically, Alpinieri points to an Assembly Committee on Banking and Finance analysis noting that section 25501.5 was aimed at addressing "the problem of bucket shops or boiler room operations that engage in securities fraud" and targets " 'disreputable brokers who victimize customers by operating illegally; unlicensed persons who sell products such as viaticals, mortgage pools, and pyramid or "Ponzi" schemes; and persons licensed in a related field, like insurance, who sell securities to their existing clients without obtaining the proper securities licenses.' "  (Assem. Com. on Banking and Finance, Analysis of Assem. Bill 2167 (2003-2004 Reg. Sess., March 31, 2004) pp. 2-3.)  This analysis goes on to state:  "<u>An uncertified problem</u>.  The [Department of Corporations] regularly takes enforcement actions against unlicensed brokers.  This bill would provide a safeguard for individuals who *buy from or sell securities to* an unlicensed person.  Under current law, remedies are only available if a licensed broker-dealer violates the law, but those remedies are not available in the event the broker-dealer is not licensed."  (*Id*. at p. 3, italics added.)  The analysis further notes that the bill is comparable to another provision in the Act permitting a buyer of an unregistered security to rescind the transaction or recover damages, and would extend the same protections.  (*Id*. at p. 3.)  This is plainly a reference to section 25503, which requires privity of contract as a condition to recovery.  (*Bowden v. Robinson*, *supra*, 67 Cal.App.3d at p. 712.)  These observations, and the fact the Legislature specifically summarizes the bill as authorizing an action for rescission on behalf of "a person who *purchases a security from or sells a security to* an uncertified broker-dealer" (Assem. Com. on Banking and Finance, Analysis of Assem. Bill 2167, *supra*, at p. 1) support our interpretation of section 25501.5 as conditioning liability on privity of contract.

provisions of the Act including the definition of a broker-dealer, we need not examine the statute's legislative history. As we have stated, had the Legislature intended to provide a civil remedy against unlicensed brokers who do not directly sell securities, it would easily have done so by broadening the statute's language as it did in other civil liability provisions of the Act.

V. *Cause of Action for Breach of Fiduciary Duty*

Alpinieri contends that if we conclude privity of contract is required to sue for damages under section 25501.5, he can establish TGG owed him a specific fiduciary duty under the advisor agreement and the "financial advisor/broker-dealer relationship created thereby . . . ." Alpinieri suggests this court's decision in *Viterbi*, *supra*, 191 Cal.App.4th 927 holds that a fiduciary duty is a substitute for privity.

Alpinieri's complaint does not allege facts sufficient to sustain a cause of action for breach of fiduciary duty. He alleges TGG contacted him and solicited him in various ways regarding investment opportunities, persuaded him to invest in MachineTek, was his "primary contact[]" with regard to his MachineTek investment, and received a commission from MachineTek. Though he alleges TGG "sold securities in the form of membership units," the subscription agreement attached to the first amended complaint establishes that Alpinieri purchased the units from MachineTek, and MachineTek was the actual seller. We may judicially notice these facts, which derive from the legal effect of the subscription agreement. (See *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 754 [where judicial notice is requested of a legally operative document like a contract, the court may take notice not only of the fact of the document but also

27

facts that clearly derive from its legal effect].)  These are not sufficient allegations of a stockbroker/stock buyer relationship that would give rise to fiduciary duties.  (*Apollo Capital*, *supra*, 158 Cal.App.4th at p. 245 [allegation that individual was " 'also the stockbroker that solicited and sold' " the bridge notes to investors is not a sufficient allegation of a stockbroker/stock buyer relationship that gives rise to fiduciary duties].)

Nor is there any indication that Alpinieri and TGG entered into a financial advisor agreement.  "Under the doctrine of truthful pleading, the courts 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts that are judicially noticed.' [Citation.] 'False allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded . . . .' "  (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400; accord, *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1102 [allegations contrary to the law or to a fact of which judicial notice may be taken will be treated as a nullity].)  The referenced exhibit to the complaint governs over any contrary allegations, and reflects only a *proposal* that TGG would provide such services to a corporation.  Moreover, that proposal is unsigned, and does not reflect a binding commitment.

Thus, Alpinieri's conclusory allegations, including the conclusions that TGG and Alpinieri entered into a financial advisory service agreement or TGG sold securities to Alpinieri, are insufficient.  Even liberally construing Alpinieri's complaint to accept that TGG gave Alpinieri investment advice, the scope of TGG's fiduciary duty depends on the nature of the broker/customer relationship.  (*Apollo Capital*, *supra*, 158 Cal.App.4th at p.

28

245.) To this end, Alpinieri has not alleged facts establishing a " 'key factor' " in establishing a confidential relationship, namely, control by TGG over his property. (*Id.* at p. 246.) " '[T]he mere placing of a trust in another person does not create a fiduciary relationship.' " (*Apollo Capital*, at p. 246, quoting *Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, 13.)

Alpinieri declined to amend his first amended complaint and has not asserted how he can state any other cause of action on appeal. Strictly construing his pleading, we presume these are the strongest allegations he could make. (*Moncada v. West Coast Quartz Corp.*, *supra*, 221 Cal.App.4th at p. 792.) Accordingly, there is no basis to permit leave to amend.

## DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.